# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | January 22, 2019 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Katharine S. Hayden, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    **Cruz, et al. v. JMC Holdings, Ltd. d/b/a Domino's Pizza, et al.**
              *Docket # 16-cv-9321 (KSH)(CLW)*

Dear Judge Hayden:

      We represent named plaintiffs Jesy Cruz, Luis Rodriguez, and Mercedes Trinidad, as well as 24 individuals who filed consents to become plaintiffs in this Fair Labor Standards Act case pursuant to 29 U.S.C. § 216(b) (the "opt-in plaintiffs," and collectively with the named plaintiffs, "plaintiffs"), in the above-captioned matter. We submit this letter to the Court with the consent of John Cilmi, the named individual defendant in this case (Mr. Cilmi is also the president and sole owner of the corporate defendant, JMC Holdings, Ltd.), to report to the Court that the parties have reached a final agreement to settle this matter. The fully executed settlement agreement is attached to this letter, and the parties submit that the Court should dismiss the case because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation conducted under the auspices of the JAMS mediation service.

## Background

      This is a wage-and-hour case brought under the Fair Labor Standards Act and New Jersey Wage & Hour Law. Defendants operate several Domino's Pizza franchises in New York and New Jersey; plaintiffs are former delivery drivers for defendants in New Jersey. Plaintiffs asserted claims for failure to pay the minimum wage and overtime under federal and state law, but all of these claims stemmed from the underlying allegation that defendants failed to sufficiently reimburse plaintiffs for their expenses incurred for the "tools of the trade" – their vehicles – that they used to make deliveries for defendants. Specifically, defendants had a policy of reimbursing delivery drivers at a flat rate of $1.00 per delivery, regardless of actual expenses incurred by those drivers.

Hon. Katharine S. Hayden, U.S.D.J.
January 22, 2019
Page 2 of 6

Plaintiffs' theory of recovery was twofold: first, that defendants were not entitled to take advantage of the "tip credit" because they failed to supply the disclosures mandated by law as prerequisite to the tip credit, and second, that because plaintiffs were not being fully reimbursed for expenses, they were not receiving the minimum wage "free and clear." As a result, defendants had violated the minimum wage laws, and, necessarily in weeks when plaintiffs worked overtime, the overtime laws as well.

Rather than filing an answer, defendants approached plaintiffs to explain why they believed that plaintiffs' theories of the case were mistaken, and contended that plaintiffs were not entitled to any recovery at all. They contended that (a) they had properly informed employees regarding the tip credit and were entitled to take advantage of it, and (b) that they had sufficiently reimbursed plaintiffs for expenses, such that they satisfied the minimum wage and overtime provisions of the law. Defendants therefore stated that they owed plaintiffs nothing, and ultimately produced various records to support their contentions. Defendants then began producing documentation to support their position. In the interim, 24 other delivery drivers filed consents to become FLSA plaintiffs in this case, alleging that they were subject to identical treatment as the named plaintiffs; defendants correspondingly took the same position with respect to both the named plaintiffs and the opt-in plaintiffs.

Because the parties' respective views were so far apart, they were unable to reach a resolution of the case on their own. However, the parties were in accord that the amounts of money at issue did not justify the expense of full-blown litigation; therefore, they mutually agreed to formal mediation. The parties engaged the services of the JAMS mediation service, and were able to achieve a mutually acceptable settlement, which they were ultimately able to hammer into a written settlement agreement.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $44,750. This figure is inclusive of litigation expenses, attorneys' fees, and service awards. As experienced wage-and-hour counsel, we believe this to be a fair resolution of the matter.

As noted above, defendants deny each and every one of plaintiffs' allegations. Defendants state that they informed plaintiffs of the "tip credit," that they paid sufficient amounts of money to plaintiffs for expense reimbursement, and that they properly paid overtime. Defendants produced documents to support each of those positions. For example, they produced copies of employment handbooks, signed by employees, which expressly provided the information required by law for employers to claim the tip credit. Additionally, they produced mileage reports reflecting the fact that plaintiffs were substantially overestimating the number of delivery miles they drove in the course of their employment (and therefore overestimated the amount of reimbursement to which they were entitled.) Defendants also pointed out that the mileage reimbursement rates reflected in plaintiffs' Complaint represented an upper bound estimation, and that plaintiffs were likely not entitled to those amounts. Finally, defendants produced records showing that they did pay time-and-a-half to employees on the rare occasions when those employees worked overtime, and that they paid the full minimum wage for "inside work."

Based on the above, plaintiffs were very concerned about (a) whether they would be able to maintain the case as a class action, given individualized questions about the applicable rate of reimbursement to which each employee was entitled, and (b) whether they would be able to recover anything if they prosecuted the case. As a result, and at the recommendation of the JAMS mediator, they agreed to settle their claims (for an amount significantly higher than defendants' original offer).

Because of the nature of the suit and the size of the settlement, it would have been impracticable to calculate the exact amount due to each plaintiff. Nevertheless, because different plaintiffs worked very different amounts of time during the relevant time period – ranging from six weeks to two full years – it would be inequitable to evenly divide the settlement fund among the plaintiffs. Instead, the Settlement Agreement allocates specific amounts to each plaintiff — those amounts are identified in Exhibit B to the Settlement Agreement — derived by pro rating the settlement fund based on the number of hours each plaintiff worked for defendants during that time period. In addition, the three named plaintiffs, who took the risk of coming forward (even while continuing to work for defendants), who acted as liaisons for potential and actual opt-in plaintiffs, and who took time from their employment to invest in the mediation, will receive modest service awards under the Agreement.

## FLSA Settlement Approval

Although the Third Circuit Court of Appeals has not addressed the issue, most district courts agree that federal Fair Labor Standards Act ("FLSA") settlements must be approved by the Court in the absence of the direct supervision of the Secretary of Labor. *See, e.g., Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982). Importantly, however, Fed. R. Civ. P. 23's requirements for class action settlements do not apply to FLSA collective action settlements. *See Espenscheid v. DirectSat USA, Inc.*, 705 F.3d 770, 771-72 (7th Cir. 2013); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, *16 (S.D.N.Y. Aug. 23, 2010). As the Southern District of New York has observed:

> Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.

*deMunecas*, 2010 U.S. Dist. LEXIS 87644, at *17 (internal quotations and citations omitted).

Thus, judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable, and resolves a bona fide dispute. *See, e.g, Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *18 (D.N.J. Apr. 8, 2011). When analyzing a settlement agreement, a court must be mindful of the strong public policy in favor of settlements. *See, e.g., Farris v. JC Penney Co., Inc.,* 176 F.3d 706, 711 (3d Cir. 1999)

The instant case meets those criteria. First, it was resolved based on arms' length negotiations between plaintiff and defendants, supervised by a professional, neutral mediator,

Hon. Katharine S. Hayden, U.S.D.J.
January 22, 2019
Page 4 of 6

Carol Wittenberg of JAMS. Second, although no formal discovery was undertaken, defendants produced about 1,400 pages of documents for plaintiffs to review and analyze, to assess both the viability and value of their claims.

Third, the settlement resolves bona fide disputes between the parties regarding the merits of the case. As discussed *supra*, the parties disagree about whether plaintiffs were adequately reimbursed for the expenses they incurred in making deliveries for defendants. Whether they were depends on a combination of factors, including the number of miles each plaintiff drove per delivery and the type of car that each plaintiff was driving while making those deliveries.

Fourth, the settlement is reasonable overall. Plaintiffs estimated that their claims could have been a collective $36,000, if they had been able to fully prevail, but given the existence of defendants' potentially strong defenses, the settlement amount is fair; plaintiffs gain a substantial portion of this potential recovery without the risks associated with litigation and (ultimately) trial. Note that the full amount of the settlement (net of costs, fees, and the like) will be distributed to plaintiffs; if any plaintiff fails to cash his check, the money will not revert to defendants, but will be redistributed *pro rata* to other plaintiffs.

Pursuant to counsel's retainer agreements individually signed by each plaintiff, we will be reimbursed for out-of-pocket expenses of $6,532.75 (filing fee, service of process, interpreter fees, and mediation fees)[1] and will retain 1/3 of the net settlement (i.e., an additional $12,739.08) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this district, and is routinely approved by courts in this Circuit. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *9 (D.N.J. Mar. 26, 2012). Fee awards have ranged from 19 percent to 45 percent of the settlement fund. *See In re Chickie's & Pete's Wage & Hour Litigation*, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014); *see also Brumley*, 2012 WL 1019337, at *12 (collecting cases where attorneys' fees around 30 percent of settlement funds were found reasonable).

While the Settlement Agreement, consistent with plaintiffs' retainer agreements, provides for a percentage of recovery, a lodestar cross-check reflects the reasonableness of those fees. Specifically, our lodestar is $21,262.50, which results in an effective multiplier of just 0.6:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $350 | 17.10 | $5,692.50 |
| David Nieporent | Senior Associate | $300 | 54.70 | $15,570.00 |
| **TOTAL** | | | **71.80** | **$21,262.50** |

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process, interpreter, and JAMS bill are attached as Exhibit C.

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and when both attorneys worked on the same task, David Nieporent billed at just $150, half his usual rate.

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New Jersey since 1991, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in roughly 350 such cases and trying several to verdict. I have substantial experience prosecuting and settling wage and hour collective and class actions, serving as lead or co-lead counsel on numerous wage and hour cases that district courts have certified as class actions and/or collective actions. *See e.g., Gomez et al. v. TNJ Enterprises Inc., et al.,* 16-cv-4824 (SDW)(LDW)(D.N.J., Aug. 30, 2018)(FLSA collective and Rule 23 class action); *Campbell v. Steadman Parking*, 12-cv-4318 (SMG), (E.D.N.Y., Sep. 26, 2013)(same); *Lopic et al. v. Diskal, Inc.,* et al., 14-cv-2822 (RLM) (same); *O'Connor v. RCI Plumbing*, 10-cv-3477 (JG)(MDG) (E.D.N.Y., Jan. 25, 2011)(FLSA collective action); *Caesar v. Alex Figliola Contracting*, 11-cv-82 (RRM)(JO) (E.D.N.Y., May 6, 2011)(FLSA collective action); *Basurto v. Café Au Bon Gout*, 12-cv-3758 (LTS)(FM)(S.D.N.Y., Nov. 16, 2012)(FLSA collective action); *Talbert v. Garda CL Great Lakes Inc.*, 13-cv-10353 (AJT)(MKM)(E.D.MI., June 22, 2016)(FLSA collective action); *Quow v. Accurate Mechanical, Inc.*, 15-cv-9852 (KHP)(S.D.N.Y., Feb. 12, 2018)(FLSA collective and Rule 23 class action). In addition to being admitted in the District of New Jersey, the Southern and Eastern Districts of New York, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New York, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New Jersey since 2001. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New York, as well as having been admitted to practice in the Southern and Eastern Districts of New York and the Eastern District of Michigan.

Moreover, we have been approved at these rates in this District before; see, e.g., *Gomez et al. v. TNJ Enterprises Inc., et al.,* 16-cv-4824 (SDW)(LDW)(D.N.J., Aug. 30, 2018)(approving $350/hour for David Stein and $300/hour for David Nieporent), and at slightly higher rates in New York. *See Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016)(approving $400/hour for David Stein and $325/hour for David Nieporent); *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018)(same); *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018)(same); *Zhu v. Salaam Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019)(same). And in the Eastern District, where the rates are a bit lower, we were recently awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we will note that while the Third Circuit (unlike, e.g., the Second Circuit) has not laid down any strictures on what terms may be included in a FLSA settlement, several courts in this circuit have refused to allow confidentiality provisions in such settlements, om the grounds that such provisions frustrate the implementation of the FLSA. *Brumley* 2012 WL 1019337, at *4. For that reason, the Settlement Agreement herein does not contain such a provision. Additionally, it does not contain a general release, which some courts have similarly looked askance at; only wage and hour claims are released.

Hon. Katharine S. Hayden, U.S.D.J.
January 22, 2019
Page 6 of 6

      For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                                Very truly yours,

                                                David Stein

Enc.

cc: John Cilmi (via email)